MISSOURI PAC. R. CO. et al. v. METTE.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1919.)

No. 5379.

1. ABATEMENT AND REVIVAL ⬤⇒15—ACTION MAINTAINABLE IN FEDERAL COURT UNDER EMPLOYERS' LIABILITY ACT AFTER DISMISSAL IN STATE COURT.

The provision of Employers' Liability Act, § 6, as amended by Act April 5, 1910, c. 143, § 1 (Comp. St. § 8662), that no case arising under the act and brought in a state court shall be removable, does not deprive a plaintiff of the right to dismiss an action brought in a state court, and bring a second action in a federal court.

2. COURTS ⬤⇒284—JURISDICTION OF ACTION UNDER EMPLOYERS' LIABILITY ACT NOT DEPENDENT ON CITIZENSHIP.

Jurisdiction of a federal court of an action brought under Employers' Liability Act is given by section 6 of the act, as amended by Act April 5, 1910, c. 143, § 1 (Comp. St. § 8662), and is not dependent on diversity of citizenship, and where the action is against a receiver, a succeeding company, which in purchasing the property assumed payment of all claims against the receiver, may be joined as a defendant, regardless of its citizenship.

3. MASTER AND SERVANT ⬤⇒279(4)—EVIDENCE OF NEGLIGENCE OF ENGINEER IN STARTING ENGINE STRIKING SWITCHMAN.

In an action for injury to a switchman, struck at night by an engine passing a switch he had just thrown, evidence *held* insufficient to show negligence of the engineer in starting his engine, which was then standing still, when the target light showed that the switch was thrown for his passage; there being no evidence of rule or custom requiring him to await other signal before moving.

4. MASTER AND SERVANT ⬤⇒276(1)—PROOF OF EMPLOYMENT IN INTERSTATE COMMERCE INSUFFICIENT.

Evidence that a switchman, injured in railroad yards, was engaged in throwing a switch for the passing of an engine for a purpose not shown, and in directing another engine to move a caboose to another part of the yards, *held* not to sustain an allegation that he was employed in interstate commerce, within Employers' Liability Act, § 1 (Comp. St. § 8657).

In Error to the District Court of the United States for the Eastern District of Missouri; Jacob Trieber, Judge.

Action at law by Frank A. Mette, a minor, by his next friend, Katherine Ludington, against the Missouri Pacific Railroad Company and B. F. Bush, receiver of the Missouri Pacific Railway Company. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

H. H. Larimore and James F. Green, both of St. Louis, Mo. (Edward J. White, of St. Louis, Mo., on the brief), for plaintiffs in error.

Sidney Thorne Able, of St. Louis, Mo. (Charles P. Noell, of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN, Circuit Judge, and MUNGER and YOUMANS, District Judges.

YOUMANS, District Judge. Defendant in error, hereafter called plaintiff, brought a suit on the cause of action declared upon in his petition herein in the circuit court of St. Louis, Mo. On his motion that suit was dismissed without prejudice. He then brought this

suit. As the jurisdictional ground he alleged that B. F. Bush, as receiver, was operating the railroad of the Missouri Pacific Railway Company as a carrier in interstate commerce; that plaintiff was employed by said receiver, and while so employed was injured through the negligence of the receiver's employés. The plaintiff alleges, also, that since his injury all of the property of the Missouri Pacific Railway Company has been sold under decree of court to the Missouri Pacific Railroad Company, which "assumed and agreed. to pay, as a part of the purchase price of the said properties, all unpaid indebtedness and liabilities of the said receiver incurred by him in the management or operation by him of the said properties between August 19, 1915, the date of his appointment, and the date of the delivery by the said receiver of possession of such properties to the defendant Missouri Pacific Railroad Company," and that plaintiff "received the injuries herein complained of during such period, and that the liability of the receiver to plaintiff is unpaid, and is one of those liabilities assumed by the defendant Missouri Pacific Railroad Company."

The receiver filed a plea in abatement to plaintiff's petition. The plea states that the court "should not assume jurisdiction of the subject of this action, or of the parties hereto, for the reason that heretofore, to wit, on or about the 9th day of June, 1917, and before the institution of this cause in this court, suit for damages was duly instituted against this defendant by the above-named plaintiff on the same cause of action and for the same injuries as set forth in plaintiff's amended petition in this cause, in a state court of competent jurisdiction, to wit, in the circuit court of the city of St. Louis, Mo., said last-named court being one of general and common-law jurisdiction, with full power and authority to duly and lawfully try said cause and render final judgment therein," and "that while said cause was pending in said circuit court of the city of St. Louis plaintiff herein duly filed in said court a motion asking for certain relief and orders on the part of said court, which said motion was duly considered and passed upon by said circuit court at the request and prayer of this plaintiff." The plea in abatement was overruled, and this is assigned as error.

In his amended petition, on which the case went to trial, plaintiff alleges that on or about the 26th day of January, 1917, he was in the employ of the defendant as a switch tender, "and on said date, and while so employed, and while working in the scope of his employment, and while plaintiff was in the yards of the defendants in the city of St. Louis and state of Missouri, for the purpose of, and while in the act of, delivering orders in connection with, and for the purpose of, and while in the act of, assisting in the movement of interstate shipments, cars, and trains, the plaintiff was struck, run over, and injured, by a switch engine operated and controlled by the employés of the receiver." The allegations of negligence are that the employés in charge of the switch engine violated a stop signal; that they failed and neglected to ring a bell; that they carelessly and negligently backed the switch engine through a screen of steam escaping from a de-

fective engine; that they failed to keep a lookout, and that they failed to give any warning of the movement of the engine.

During the trial, the plaintiff introduced in evidence, over the objection of plaintiffs in error, the deed of Special Commissioner Joseph S. Dobyns to the Missouri Pacific Railroad Company. The objection of counsel for plaintiffs in error was:

"That the obligations and liabilities to be assumed or paid by the Missouri Pacific Railroad Company are to be fixed by the court having jurisdiction of the receivership, when such claim or claims as the one now being litigated have been presented to that court pursuant to its orders made in such receivership."

In ruling upon that objection the court said:

"I desire to state that that is a question that the court feels has been determined by another judge in this case, and for that reason the court will not review his rulings, regardless of what the individual opinion of this court may be."

The record shows that there was a difference of opinion between counsel as to what had been decided by the court upon the point in question, but the record does not show what the facts were, so as to enable this court to determine what was decided, nor how the decision was arrived at. From the silence of the record it must be presumed that the decision of the court was correct on that point.

Excerpts were read from the order approving the sale and from the deed conveying the property to the Missouri Pacific Railroad Company, to the effect that the purchaser assumed all liabilities of the receiver incurred by him in the management and operation of the property purchased. Objection was made by counsel for plaintiffs in error to the reading of those excerpts in evidence. The refusal of the court to sustain the objection was assigned as error.

At the conclusion of the testimony a request was made on behalf of the receiver that the jury be instructed to return a verdict for him. This request was refused, and the receiver excepted. A similar request was made on behalf of the railroad company, which was likewise refused, and an exception taken. These refusals are assigned as error.

The case went to the jury on one charge of negligence only. It was stated by the court to the jury as follows:

"In this case the plaintiff has set out several acts which he alleges were acts of negligence, and which caused the injury to the plaintiff. The plaintiff relies on only one issue now, and that is this: Do you find that it has been established, by a preponderance of the evidence, that after the plaintiff, who was a switch tender, had given the signal to the engineer in charge of engine No. 9458 to stop, in order to enable him to throw the switch, that the engineer disregarded the stop signal, started his engine toward him, and while he was engaged in throwing the switch he was run over by the engine and suffered the injuries complained of?  *  *  *

"The plaintiff testified that he had given the stop signal in order that he might throw the switch; that in spite of that the engineer came forward, and he (the plaintiff) not realizing that the engineer was going to come forward, did not get out of the way, but attempted to throw the switch, and was run over by the engine and suffered these injuries. It also appears from his testimony that at the time that he says he gave the stop signal the engine was at a standstill; that the switch was closed, and the charge showed that it was closed, which of itself is a signal to the engineer not to come on.  *  *  *

"If you believe that it has been established by a preponderance of the evidence that the plaintiff had given the stop signal to the engineer of the engine, and that the engineer in spite of that fact disregarded that signal, or failed to see it, and came forward with his engine and moved it without giving plaintiff an opportunity to move away, or failed to signal to him that he would come, so as to give him the opportunity to get out of there, and by reason of that the plaintiff was run over and suffered these injuries, then, gentlemen of the jury, he is entitled to a verdict at your hands."

Counsel for defendants in error excepted to the instruction of the court, as shown by the record, as follows:

"The defendant excepts to that portion of the court's charge wherein the court charges the jury that if they believe that plaintiff had given the stop signal to the engineer, and the engineer disregarded that signal, or failed to see it, and therefore ran the engine over the plaintiff, that the plaintiff is entitled to recover, for the reason—

"The Court: You need not state the reason.

"Mr. Larimore: I want to put in the record. For the reason that there is no testimony in the case that the engineer in charge of engine 9458 saw this stop signal, was in a position to see it, or that the plaintiff, Mette, gave the stop signal in sufficient time so it could be seen by the engineer; neither is there any testimony showing that there is any rule or custom of the defendant which required those in charge of engine 9458, situated as that engine was situated, to be on the lookout to receive such signals from switch tenders, when such engine was already at a standstill, and with the target against it."

The giving of the instruction as excepted to is assigned as error.

[1] The plea in abatement is based on the theory that, since section 6 of the Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 66 [Comp. St. § 8662]) provides that "no case arising under this act and brought in any state court of competent jurisdiction shall be removed to any court of the United States," plaintiff could not dismiss his case in the state court and afterwards bring it in a United States court. Plaintiff had the right to dismiss his case in the state court. Alsop v. McCombs, 253 Fed. 949, 165 C. C. A. 391; Barrett v. Virginian Railway Co., 250 U. S. 473, 39 Sup. Ct. 540, 63 L. Ed. 1092, decided by the Supreme Court of the United States June 9, 1919. When plaintiff afterwards brought the same suit in a United States court, such proceeding was not a removal, within the meaning of the Removal Act, nor within the meaning of section 6 of the Employers' Liability Act. It was not error to deny the plea in abatement.

It was not the purpose of plaintiff's petition to charge a joint liability against the receiver and the railroad company. The effect of the allegations of the petition was to charge the receiver with the primary liability, and that the railroad company assumed the payment of such liability. Excerpts from the deed and order of court introduced in evidence were competent to prove the assumption. Their admission for that purpose was not error.

[2] Counsel for plaintiffs in error also contend that the court was without jurisdiction, because there was no diversity of citizenship between defendant in error and the Missouri Pacific Railroad Company. This suit was brought under the federal Employers' Liability Act. Under the provisions of that act jurisdiction did not depend

on diversity of citizenship, so far as the receiver was concerned. The liability of the railroad company was dependent upon the establishment of the liability of the receiver. The jurisdiction of the court below was determined by the primary and original liability of the receiver, and not by the secondary and dependent liability of the railroad company. Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145; Railroad Company v. Railway Co., 111 U. S. 505, 4 Sup. Ct. 583, 28 L. Ed. 498; Dewey v. Fairmont Co., 123 U. S. 329, 8 Sup. Ct. 148, 31 L. Ed. 179; Carey v. Houston and Texas Ry., 161 U. S. 115, 16 Sup. Ct. 537, 40 L. Ed. 638; Campbell v. Golden Cycle Min. Co., 141 Fed. 610, 73 C. C. A. 260; Pell v. McCabe, 256 Fed. 512, —— C. C. A. ——.

[3] We think that the instruction given by the court, in the light of the evidence, was wrong. The only testimony with regard to the occurrence was given by the plaintiff himself. On direct examination he said:

"Q. What was the engine doing at that time? A. The engine was standing still.

"Q. How did you happen to give a stop signal? What was the purpose of the stop signal? A. The switch was against me.

"Q. Is it customary to give a stop signal when an engine is already standing, and a switch is against them? A. Yes, sir.

"Q. For what purpose? A. For the protection.

"Q. What did you do after giving the stop signal? A. After giving the stop signal there was not a sufficient amount of room for me to throw the switch between track 13 and track 23. I stepped just north of this track and threw it there, threw the switch, and Halley came to the door and asked me what the caboose number was, and I got as far as the switch lever in the locks, and just as I pushed it down I repeated the order. I got as far as 'caboose,' and just as I started to raise up to give him the number I was struck.

"Q. What happened when you were struck, if you know? A. The only thing that I remember is that everything went black.

"Q. Had you given any come ahead signal after throwing that switch, before you were hit? A. No, sir."

On cross-examination plaintiff said:

"Q. At the time you gave this stop signal, the engine was standing still? A. Yes, sir.

"Q. And the switch was against you? A. The switch was against him; yes.

"Q. It was nighttime? A. It was 3:20 in the morning.

"Q. That switch being against him, the light on that switch indicated to the engineer in charge of the engine that the switch was against him also, did it not? A. Yes, sir.

"Q. He did not need your signal to know that that switch was against him, did he? A. By rights I did the right thing by giving that—

"Q. We won't go into that now. But he did not need your signal to know that switch was against him; it was there in plain view, turned against him, and the lights indicated to the engineer that that switch was against him? A. Yes, sir.

"Q. Always when you passed through the yards, has it been your custom, when an engine is standing still, with a switch against it, which condition is apparent to the engineer in charge of the engine, to follow that up with a stop signal to the engineer? A. I do.

"Q. What kind of a signal is a stop signal? A. In nighttime with a lamp. It is swung such as this (illustrating).

"Q. What is the reason for giving a stop signal to an engineer on an engine standing still, with the switch against him? A. Well, there is no reason at all; he cannot get out.

"Q. He cannot get out, can he? A. No, sir.

"Q. He could not have gotten out there to save his life, until that switch was thrown, could he? A. No.

"Q. Without derailing his engine and turning it over? A. That is the only way.

"Q. That is the only way he could have gotten out. He was tied up there in a pocket, you might say, with the switch against him, and with the target turned to indicate that situation to him, and until some one opened that switch that engine couldn't have gotten out of there, could it? A. No, sir.

"Q. And he was standing still at the time? A. Yes, sir.

"Q. And you followed up that situation with a stop signal? A. Yes, sir."

Further in his cross-examination plaintiff said:

"Q. What was the purpose of your throwing that switch? A. He could not have gotten out there.

"Q. Who could not have gotten out? A. 9458.

"Q. Then you threw that switch for the purpose of letting 9458 out, did you? A. Yes, sir.

"Q. After throwing that switch, you never gave any more signals to engine 9458, did you? A. No, sir.

"Q. When you threw that switch, that target turned around, and indicated to the engineer of engine 9458 that the switch was open and he could leave the track? A. He had no business leaving the track—

"Q. Answer the question. That is what it did, did it not? A. Yes; it indicated that he could leave.

"Q. And you gave him no further signal? A. I gave him no further signal."

There was no proof that it was the custom to give a come ahead signal. The question was asked the plaintiff by his counsel, but on objection the question was withdrawn, and no answer was given. The plaintiff testified that when he threw the switch it indicated to the engineer that the switch was open and that he could leave the track. He also testified that until the switch was thrown the engineer could not leave the track without derailing his engine. With the engine standing still, there would appear to be no reason why the engineer should be looking for a stop signal, or why one should be given. The testimony was not sufficient to establish negligence on the point that was permitted to go to the jury. The instruction was erroneous, in that the jury was told that if the engineer failed to see the stop signal, and moved his engine without signaling the plaintiff, or giving him an opportunity to move away, he was negligent. The effect of that instruction was that the engineer was negligent if he moved his engine toward the switch without giving a signal to plaintiff. When the plaintiff threw the switch for the purpose of letting the engine out, and in throwing the switch caused the target to indicate to the engineer that he could run his engine out, there does not appear to be any reason why the engineer should wait for any other signal, nor why he should give a signal that he intended to do what he had been notified by the change in the target that he could do, and what it was the apparent purpose of Mette that he should do.

[4] According to the testimony of the plaintiff, at or about the time of his injury, he was engaged in the performance of two duties. He carried a message to a switch foreman in charge of another engine, directing him to take a certain caboose to a point in the railroad yards

in St. Louis. His testimony indicates that the foreman put to him a question with reference to this message at the same time the plaintiff was performing the other duty; that is, throwing the switch. There is no testimony stating for what purpose the engine which inflicted the injury was leaving the switch. There is direct testimony that the caboose was to be moved from one part of the yard to another. There is, therefore, no proof in the record to sustain the allegation of the petition that the plaintiff was engaged in moving engines or cars in interstate commerce. The facts in this case fall within the rule laid down by the Supreme Court of the United States in the case of Illinois Central Railroad Co. v. Behrens, Adm'r, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163. In that case the Supreme Court said:

"Passing from the question of power to that of its exercise, we find that the controlling provision in the act of April 22, 1908 [Comp. St. § 8657], reads as follows: 'Section 1. That every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employé, to his or her personal representative, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employé is engaged is a part of interstate commerce."

The proof fails to show that the service in which plaintiff was engaged was a part of interstate commerce. On account of such failure the court should have given the instructions requested to find for the defendants respectively.

For the errors indicated, the case is reversed and remanded for a new trial.

SANBORN, Circuit Judge. I concur in the result in this case, and in the foregoing opinion, on the grounds that there was no substantial evidence of the negligence of the engineer, or of the alleged fact that the plaintiff was engaged in interstate commerce at the time of his injury.

MUNGER, District Judge. I concur in the result in this case because there was no evidence of the engineer's negligence in the issue of negligence submitted to the jury by the court's instruction. I also concur that the court had jurisdiction, but upon the ground that the suit was one arising under the laws of the United States, and therefore that jurisdiction did not depend upon diversity of citizenship. The plaintiff, in good faith, sought to establish the liability of the railway company under the act of Congress imposing a liability upon receivers of common carriers by railroad while engaging in interstate commerce in favor of employés employed by the carrier in such commerce (35 Stat. 65; 36 Stat. 291) against the railway company which had assumed any

such obligations of the receiver. His action clearly arose under such statute, so far as it ran against the receiver, and it also arose under that statute as against the one who assumed the liability, as that statute was one of the essential ingredients of his suit, and the decision of his case depended on the construction given that statute. Railroad Company v. Mississippi, 102 U. S. 135, 141, 26 L. Ed. 96; In re Lennon, 166 U. S. 548, 553, 17 Sup. Ct. 658, 41 L. Ed. 1110; Macon Grocery Co. v. Atlantic Coast Line, 215 U. S. 501, 507, 30 Sup. Ct. 184, 54 L. Ed. 300.