JAMES LAUGHLIN v. MISSOURI PACIFIC RAILROAD COMPANY and MISSOURI RAILROAD CORPORATION IN ILLINOIS, Appellants.

In Banc, March 3, 1923.

1. **CONTRIBUTORY NEGLIGENCE**: Interstate Commerce: Lex Loci as Defense. A switchman engaged in interstate commerce may re-

cover damages for personal injuries sustained, even though guilty of contributory negligence in being on the track in front of the engine and in trying to jump upon its footboard. In such case his contributory negligence can only be considered by the jury on the question of the reduction of the amount of damages. And the switchman being engaged in interstate commerce, the defenses available under the law of the state in which the injury was received are not available under the Federal Employers' Liabiity Act.

2. ————: ————: Making up Interstate Train: Switchman. Testimony that the switchman, engaged in Illinois in making up a train in a switchyard of an Illinois corporation, had ridden a freight car of the Cotton Belt from the "hump" in the main track to a switch track and attached it to a Cotton Belt train, and was returning to the "hump" for another car for the same track and destination when he was struck by an engine on the main track, and that the Cotton Belt carried no loaded cars destined for Illinois points, and had no track in Illinois, but used the track of a Missouri corporation to a point in Missouri, is sufficient evidence to justify a finding by the jury that the switchman and his employer were both engaged in interstate commerce at the time of his injury. And it would have made no difference if his next assignment had been in connection with an intrastate shipment, since he did not complete his duty in connection with the interstate shipment until he had returned to the "hump."

3. NEGLIGENCE: Injury to Switchman: Neglect to Stop Train After Signal: Member of Different Crew. Testimony tending to show that the engineer was looking right at the switchman standing between the rails in front of the switch engine, and that the switchman gave a stop signal to the engineer, who, apparently in response to the signal, slowed down the speed to a rate of two or three miles an hour, until the engine was within three or four feet of the switchman and then suddenly increased its speed, makes out a case of negligence on the part of the engineer; and, the engineer having seen the switchman give the stop signal, it makes no difference whether the switchman was a member of the crew working with the engine, where the evidence further tends to show that, with the knowledge and acquiescence of the company, it was customary for "hump-riders," or switchman engaged in making up trains in the yard, to ride said engine when signaled by them.

4. ————: Instruction: Engineer's Duty to Look Out for Switchman of Different Crew. Where it was customary for hump-riders or switchmen at work in the switchyard in making up trains to signal the engineer of the switch engine moving towards the hump to stop, and for him to accept such signal, stop and permit them to board

Laughlin v. Mo. Pac. Railroad Co.

the engine and ride back to the hump, an instruction requiring the jury to find that the engineer actually saw the injured switchman's signal, without requiring them to find that the engineer and switchman were members of the same crew, was not erroneous. The switchman, having placed himself on the track in front of the engine and given the usual stop signal, and it being customary, under such circumstances, for the engineer to heed the signal and stop the engine, whether the switchman was a member of his crew or of another, it was the duty of the engineer, if he saw the signal, to heed it; and under such circumstances, the rule, if it be a rule, that the engineer is required to be on the lookout for members of his own crew only, and that switchmen of other crews are required to look out for themselves, has no application.

5. ———: Boarding Engine: Reasonable Opportunity.    An instruction requiring the engineer, after he had received the customary signal to stop the switch engine in order that a switchman might board it, to both stop the engine and afford the switchman a reasonable opportunity to board it, is not subject to the objection that it declared the railroad company negligent if the engineer increased the speed before the injured switchman was safely upon the engine.

6. ———: Evidence: Assumption of Risk: Railroad Rules: Abrogation: Harmless Error.  A rule of the railroad company declared that "all persons are strictly forbidden to board engines or cars while they are in too rapid motion" and "under no circumstances must they stand on track and board engines or cars when same are approaching them." Plaintiff, a switchman engaged in making up a train, when the switch engine was backing up the track, gave the customary stop signal, which the evidence tends to show the engineer saw, and first heeded, and reduced the speed until the engine was within a few feet of the switchman, standing on the track, and then suddenly increased its speed, and then the switchman, it being too late to jump from the track, in order to save himself, jumped for the footboard, reached it, rebounded backward and was run over. Held, that, the proof being that the switchman did not voluntarily attempt to board the moving engine, but was compelled to jump for the footboard to avoid a threatened injury, caused by the negligent act of the engineer in suddenly increasing the speed after he had received the signal, the promulgation of the rule could not defeat recovery, and proof of its habitual disregard was inadmissible, but also allegations and proof of its existence were inappropriate and immaterial; but whatever prejudice defendant suffered by the admission of testimony concerning the abrogation of the rule was clearly removed by instructions which required the jury to find that in order for the switchman to save himself it was imperative that he jump for the footboard.

Appeal from St. Louis City Circuit Court.—*Hon. J. Hugo Grimm,* Judge.

AFFIRMED.

*J. F. Green* and *H. H. Larimore* for appellants.

(1) Instruction lettered "A" given to the jury by the court at the request of respondent was erroneous in the following particular: (a) Because said instruction told the jury that even though plaintiff was at the time guilty of negligence contributing to cause his injuries, if any, the verdict should still be for plaintiff, but that the damages might be diminished in proportion to the amount of negligence attributable to plaintiff. This for the reason that the proof does not show that said plaintiff at the time it is alleged he was injured was employed in interstate commerce and, therefore, the rule of comparative negligence, as laid down by the Federal Employers' Liability Act, has no application. Erie Railroad Co. v. Welsh, 242 U. S. 303; Patterson v. Dir. Gen. of Railroads, 105 S. E. 746; Ill. Cent. Railroad v. Behrens, 233 U. S. 473; C. B. & Q. R. R. Co. v. Harrington, 241 U. S. 177; Bishop v. Delano, 265 Fed. 263; Mo. Pac. Railroad Co. v. Mette, 261 Fed. 755; Ill. Cent. Railroad v. Industrial Board, 119 N. E. 920; Shanley v. P. & R. Railroad, 221 Fed. 1012. (b) Said instruction was further erroneous in that it submitted to the jury the following: "If you further find and believe from the evidence that it was the duty of the agents and servants of the said defendant operating the said engine, if you find that they were operating the said engine, to look out for other employees in the said track in the said yards," for the reason that respondent was not a member of the crew operating the engine in question, but was employed as a switchman in a busy switch yard, and under both Federal and State law those operating said engines were not required to be on the lookout for other employees, but such other employees were required to look out for

themselves. Mo. Pac. Railroad Co. v. Mette, 261 Fed. 755; Aerkfetz v. Humphreys, 145 U. S. 418; Elliott v. Ry. Co., 150 U. S. 245; Loring v. Ry. Co., 128 Mo. 349; Evans v. Wabash Ry. Co., 178 Mo. 508; Degonia v. Ry. Co., 224 Mo. 564. (c) Said instruction is also erroneous in that it required the jury to find the appellant corporation in Illinois negligent, if those in charge of the engine increased its speed before plaintiff was safely upon the engine, while the true rule is that those in charge of such engine were required to stop said engine long enough that plaintiff might be afforded a reasonable opportunity to board the same in safety. Swigert v. H. & St. J. Railroad Co., 75 Mo. 475; Barth v. Ry. Co., 142 Mo. 535; Stoddard v. Railroad, 105 Mo. App. 512. (2) It was error on the part of the court to give of its own motion, over the objections and exceptions of appellants, instruction lettered "B," in this, that said instruction told the jury that: "If on the other hand you find that the locomotive, as it approached plaintiff, slackened its speed, and that plaintiff, while it was still moving, attempted to step on the footboard of same and slipped and fell, then defendants are not liable in this case," for the reason that the plaintiff, having based his right to recover solely upon the fact that he intended to get on the engine when it should come to a stop and that the engine instead of coming to a stop increased its speed, whereupon he was injured, was not entitled to recover if he attempted to get on said engine whether the same slackened its speed or increased its speed, and this instruction confined defendants' right to a verdict at the hands of a jury upon the proposition that the engine must have slackened its speed, which permitted the plaintiff to go to the jury and recover upon a theory not pleaded in his petition. Henry County v. Citizens Bank, 208 Mo. 209; Commission Co. v. Donahoe, 210 S. W. 929; Reed v. Bott, 100 Mo. 62. (3) Respondent having based his right to recover upon the sole alleged act of negligence in that he was injured by reason of the engine not coming to a stop after it had commenced to slow down, and increased

its speed when close to respondent, when respondent had given a stop signal for the purpose of getting on such engine, only after the latter had come to a full stop, could not, by pleading a waiver in his reply, introduce testimony, over the objections and exceptions of appellants, showing the habitual violation of the rule prohibiting employees from getting on switch engines from a position in the middle of the track when such engine was approaching him, since the only effect of such testimony would be to say to the jury that plaintiff could recover, notwithstanding he was attempting to get on such footboard while the engine was in motion, and thus be inconsistent with the allegations of plaintiff's petition and with the general denial in plaintiff's reply, and also would be to permit the plaintiff, by incompetent and immaterial testimony, to support that part of his reply which can only be regarded as surplusage. Mathieson v. Railroad, 219 Mo. 542; Moss v. Fitch, 212 Mo. 484; Mohney v. Reed, 40 Mo. App. 109; Rhodes v. Holladay-Klotz L. & L. Co., 105 Mo. App. 279.

*Sidney Thorne Able* and *Charles P. Noell* for respondent.

(1) Instruction "A" given by the court at the request of respondent was properly given. (a) A switchman employed in switching cars from an interstate train (a train containing shipments moving from one state to another) is engaged in interstate commerce within the meaning of the Federal Employers' Liability Act. Evidence that such cars are loaded and are *en route* out of the particular state is sufficient to make prima-facie case and throw burden of proof on defendant. A switchman riding and switching cars loaded with merchandise out of a train in Illinois, to be made up into a train and pulled out of Illinois into Missouri, is employed in interstate commerce within the meaning of the Federal Employers' Liability Act, and the mere fact that at the time he was injured he was not actually on such a car is not material

and his case falls within the Employers' Liability Act if injured while walking back to the train being broken up to get another such car. A switchman engaged in riding cars down a hump in a switch yard is engaged in interstate commerce if such cars are loaded and are to go out of the state. Crecelius v. Chi., M. & St. P. Ry. Co., 274 Mo. 671; Erie Railroad Co. v. Downs, 250 Fed. 415, 247 U. S. 522; Midwest Nat. Bank v. Davis, 233 S. W. 406; North Carolina Railroad Co. v. Zachary, 232 U. S. 259, 58 L. Ed. 596; Roberson v. Railway Co., 201 Mo. App. 680; Payne v. Bearden, 266 Fed. 879; St. Louis-San Francisco Ry. v. Seale, 229 U. S. 160, 57 L. Ed. 1134; L. & N. Railroad Co. v. Parker, 242 U. S. 13, 37 Sup. Ct. Rep. 4; Director General of Railroads v. Bennett, 268 Fed. 767; Illinois Cent. Railroad Co. v. Porter, 207 Fed. 311; Hester v. Railroad Co., 254 Fed. 787; Central Railroad Co. v. Sharkey, 259 Fed. 144; N. Y. C. Railroad Co. v. Carr, 238 U. S. 263, 59 L. Ed. 1299. (b) Where the instruction requires the jury to find that plaintiff, an employee, was seen, it is not anything of which the defendant can rightfully complain if the instructon required the jury also to find that there was a duty on the part of those operating the engine to look out for employees on such track. Where the evidence shows that twenty or twenty-five hump-riders in going back up the hump "always go back over this hurdy-gurdy track" and that "this was the only way for switchmen to get up" and that engines that come up this track are used by the switchmen to get back up the hump quickly, to ride another car down, and that the engines take signals from such men and act upon them all the time, it would at least be a jury question as to whether there was a duty on the part of those operating the engine to look out for such employees in such "thoroughfare track." Southern Railway Co. v. Smith, 205 Fed. 360; Frazier v. Railroad Co., 264 Fed. 96; Delaware Railroad Co. v. Hughes, 240 Fed. 941, 233 Fed. 118; Southern Ry. Co. v. White, 232 Fed. 144; Chesapeake Railroad Co. v. De Atley, 241 U. S. 310, 36 Sup. Ct. Rep. 564. (2) Defendants' se-

cured instructions (numbered 5 and 6) were far more favorable to them than they were entitled to, which covered the very things that they contend that instruction lettered "B" should have covered; therefore, they have no right to complain because in this instruction the court covered another situation developed by the evidence. The instruction has no such strained meaning as appellants attempt to give it by quoting and discussing only part of it. There is nothing in the instruction telling the jury that if the engineer had not slackened its speed the plaintiff was entitled to recover. (3) Where a hump-rider walking up a thoroughfare or hurdy-gurdy track returning to the top of the hump is overtaken by an engine, also going up the hurdy-gurdy track, and he seeks to recover because after the plaintiff had given the engineer of the locomotive a signal to stop the locomotive, and after the engineer had recognized such signal and slowed up the locomotive, the engineer then, when the locomotive had come within a few feet of the plaintiff, suddenly increased the speed of the locomotive, causing him to be injured, and where the testimony of the plaintiff was, to use his words, "when I saw no chance for me to get away I jumped for the footboard," and where the allegation of the petition with reference to such matter is that "he (plaintiff) was thrown to the ground, run over and injured," and where the answer sets up that the plaintiff was guilty of negligence contributing to cause his injuries in that he violated a rule of the defendant against boarding engines in motion from the track in front of the engine, it, of course, was proper for the plaintiff to plead in his reply and to prove at the trial that there was no such rule enforced (it had been habitually violated), and that even if there had been such a rule, his attempt to get upon the footboard was brought about by the negligence of the engineer in not coming to a stop upon the signal and in suddenly starting up faster and coming toward the plaintiff. If it was proper for the defendant to plead and prove the existence of the rule, it was, of course, proper for the plaintiff to plead and prove the habitual violation

of the rule. If the defendants' pleading and proof of the rule was immaterial and surplusage, they cannot complain because the court allowed the plaintiff to prove the habitual violation of the rule.

DAVID E. BLAIR, J.—Action for damages for personal injuries. From a judgment for the plaintiff (respondent here) defendants have appealed.

The second amended petition, upon which the case was tried, avers the corporate organization of the defendants and that they were engaged as common carriers for hire in interstate commerce; that defendant, Missouri Pacific Railroad Corporation in Illinois, hereafter referred to as "Illinois corporation," owned and operated certain classification switch yards at Dupo, Illinois, used for making up trains, especially freight trains; that under the provisions of a certain deed the Missouri Pacific Railroad Company, hereafter referred to as "Missouri company," took over said switch yards and switching facilities at Dupo, and under the provisions of said deed assumed and agreed to pay all obligations and liabilities of the Illinois corporation, whether arising from contract or otherwise. No point is made in the brief that the Missouri company is not liable under said agreement in the event that the Illinois corporation was liable for the injuries sustained by the plaintiff. For that reason no further details concerning said transfer or merger need be here set out.

The switch yards at Dupo were used for classifying freight. They include a main track, called a "hurdy-gurdy" track, and on each side of the hurdy-gurdy track were parallel tracks with which a large number of side tracks connected. The method of operation was substantially as follows: A train containing a number of freight cars would be pushed by an engine to a point in said yards called the "hump," and the cars were then cut off one at a time from said train as it passed over the hump, and moved by gravity to, and stopped at, the proper place on the side track. Each car was ridden

down from the hump by a switchman, known as a "hump-rider," who stopped the car at the proper place by the use of hand brakes. After setting the car the switchman returned to the hump, preparatory to repeating the operation. To save the time of the hump-riders in returning to the hump, a hurdy-gurdy car was used. It was operated by gasoline and used on the main track of the yard on which no cars were moved by gravity. Sometimes the hump-riders rode back to the hump on switch engines which happened to be moving up the main or hurdy-gurdy tract at the time.

On July 3, 1917, plaintiff was employed by the Illinois corporation as one of such switchmen or hump-riders. From twenty to twenty-five other men were similarly engaged. Plaintiff was riding a car to track 81, where a train to be sent out on the Cotton Belt Railroad was being made up. When said car reached the proper place upon said track he stopped it, and went from such track to the hurdy-gurdy track for the purpose of returning to the hump. It was then after dark, but the yards were well lighted by electricity. A switch engine operated by the Illinois corporation was moving backward toward the hump. Plaintiff stepped between the rails in front of said engine and signaled to the engineer his intention to get upon the rear footboard of the locomotive for the purpose of riding back up the hump. He claimed the engineer was looking directly toward him when he gave the stop signal and appeared to see his signal and immediately reduced the speed of the locomotive until it reached a point within a few feet of plaintiff, when its speed was suddenly increased instead of being brought to a stop to permit the plaintiff to get upon the footboard. Plaintiff claimed he did not have an opportunity to get out of the way after such speed was accelerated and jumped for the footboard to save himeslf, and by reason of the rapid motion of the engine was thrown off. His injuries resulted in the amputation of his left arm. The petition alleged negligence on the part of the Illinois corporation in fail-

ing to bring the engine to a stop in response to plaintiff's signal to permit him to board the engine and in suddenly increasing the speed of the engine.

The Illinois corporation denied generally the allegations of the petition, and pleaded that the injury was due to the negligence of plaintiff in attempting to board the footboard of the locomotive while it was in rapid motion and while plaintiff was standing between the rails of the track, in violation of Rule Q-6, which provided as follows:

"All persons are strictly forbidden to board engines or cars while they are in too rapid motion. Under no circumstances must they stand on track and board engines or cars when same are approaching them."

Said defendant further alleged that plaintiff was not a member of the crew operating said engine, and had no connection with the operation of said engine, and was not instructed to ride said engine, and was not in performance of any duties for said defendant when injured. Said defendant also pleaded assumption of risk on the part of plaintiff, and that plaintiff and those operating the engine were fellow-servants, and that under the laws of Illinois the master is not liable for injuries received by one servant through the negligence of a fellow-servant. Said defendant then alleged that to permit a recovery by plaintiff would violate several different sections of the Constitution of the United States. The answer of the Missouri company was a general denial.

The reply of the plaintiff to the answer of the Illinois corporation denied contributory negligence of the plaintiff and violation of rule Q-6, and denied that such rule was in force or brought to plaintiff's knowledge, and alleged that plaintiff had no knowledge thereof; that if defendant ever had any such rule, it was habitually violated; that it was the habitual custom of switchmen to get on the footboard of switch engines while such engines were moving toward them, all with the knowledge and acquiescence of defendant's superior

officers in charge and in control of said switchmen; that plaintiff was engaged in the business of defendant at the time he' was injured and carrying on his work in accordance with the directions and instructions of the superior officers of said defendant at such time.

The evidence tended to show that Rule Q-6 had been promulgated and was in possession of the plaintiff, and that switchmen habitually disregarded same and were accustomed to get upon the footboard of engines moving toward them while standing in the track, and that the foreman and superintendent of the yards had full knowledge of such custom. A trial before a jury resulted in a verdict for plaintiff for $10,000.

I. Appellants contend that their instructions in the nature of demurrers to the evidence at the close of the plaintiff's case and at the close of all the testimony should have been given. Since defendants did not stand upon their demurrers at the close of plaintiff's evidence, the propriety of submitting plaintiff's case to the jury must be determined upon all the evidence introduced. As appears from appellants' brief, the basis for this contention is that plaintiff failed to show that he was employed in interstate commerce at the time he was injured, and not having so shown his recovery is barred by his contributory negligence. If plaintiff was employed in interstate commerce, he may recover, even if his contributory negligence be conceded, and such contributory negligence can only be considered by the jury on the question of the reduction of the amount of damages. [Federal Employers' Liability Acts, April 22, 1908, as set out in Richey on Federal Employers' Liability. Acts, p. 654, sec. 3; Erie Railroad Co. v. Downs, 250 Fed. 1. c. 420.]

Demurrer to Evidence: Contributory Negligence: Interstate Commerce.

Defendant offered no testimony concerning the acts of its engineer in operating the engine. The plaintiff's testimony tended to show that the engineer was looking ·right at him when he was standing between the rails

and gave the stop signal and that the engineer, apparently in response to such signal, slowed down the speed of the engine to the rate of two- or three miles per hour, until such engine was within two or three feet of the plaintiff, and then suddenly increased the speed of the engine. This testimony, in our judgment, made out a case of negligence on the part of the engineer. It makes no difference whether the plaintiff was a member of the crew working with said engine or not. The testimony tends to show that, with the knowledge and acquiescence of the said defendant, it was customary for hump-riders to ride such engine when signaled and that the engineer saw plaintiff give the stop signal.

Plaintiff's testimony tends to show that the freight car he had just ridden down from the hump to track 81 was a loaded Cotton Belt car and that he was returning for another car for the same track and destination. The Cotton Belt carried no loaded cars destined for Illinois points. That road had no tracks in Illinois and used the tracks of the Missouri company to Illmo, Missouri, from which point it used its own tracks. Plaintiff testified that he was returning for another car for the same destination. This evidence was sufficient to justify the finding by the jury that the plaintiff at the time of his injury was engaged in interstate commerce and that his employer was likewise engaged.

Even if the next work of the plaintiff had been to ride an intrastate car, his act in returning from handling an interstate car was so directly and immediately connected with the movement of an interstate car as to be a necessary incident to such movement. [Erie Railroad Co. v. Downs, 250 Fed. 415, in which case the United States Supreme Court denied a writ of *certiorari*, 247 U. S. 522; N. C. Railroad Co. v. Zachary, 232 U. S. 248, 1. c. 260; Erie Railroad Co. v. Winfield, 244 U. S. 170; Crecelius v. Ry. Co., 205 S. W. (Mo.) 181.]

If the jury so found, then the defense of contributory negligence, except in reduction of damages, was not open to defendant, even if plaintiff was so negligent

under the laws and decisions of Illinois as to bar recovery. The court therefore did not err in refusing to submit the case to the jury. If plaintiff was engaged in interstate commerce, the defenses available to defendants under the Illinois law were not available under the Federal Employers' Liability Act, and the Federal constitutional defenses pleaded need not be noticed.

The cases cited and relied upon by the defendants can be distinguished from the case at bar. In Erie Railroad Co. v. Welsh, 242 U. S. 303, the plaintiff had been engaged, as part of his duties as a yard conductor, in moving a car of freight destined outside of the state. The movement was completed. A caboose was then moved to another point in the yards, and thereafter the engine was taken by the crew to the water tank and then returned to the yard. Plaintiff was injured while alighting from the engine as it passed the yardmaster's office, to which place he was going for further orders. All orders in connection with the movement of the interstate car had then been completed, and he subsequently had been engaged in movements not interstate. It appeared that the next order given to the switching crew would have been to move another interstate car, but plaintiff had not received this order as yet. In disposing of the case Mr. Justice PITNEY said:

"The question remains whether he was performing an act so directly and immediately connected with his previous act of placing the interstate car in the 'F. D. yard' as to be a part of it or a necessary incident thereto. [New York Central & Hudson River Railroad Co. v. Carr, 238 U. S. 260, 264; Shanks v. Delaware, Lackawanna & Western Railroad Co., 239 U. S. 556, 559.] And this depends upon whether the series of acts that he had last performed was properly to be regarded as a succession of separate tasks or as a single and indivisible task. It turns upon no interpretation of the act of Congress, but involves simply an appreciation of the testimony and admissible inferences therefrom in order to determine whether there was a question to be submitted

to the jury as to the fact of employment in interstate commerce. The state courts held there was no such question, and we cannot say that in so concluding they committed manifest error. It results that in the proper exercise of the jurisdiction of this court in cases of this character, the decision ought not to be disturbed. [Great Northern Ry. Co. v. Knapp, 240 U. S. 464, 466.]"
The language used indicates some doubt on the point in the mind of the learned justice.

In C. B. & Q. Railroad Co. v. Harrington, 241 U. S. 177, plaintiff's husband was a switchman in defendant's yards in Kansas City, Missouri. The defendant was engaged in both interstate and intrastate commerce. The deceased was killed while assisting in moving a car of coal belonging to the defendant, which had been standing on the storage track for several days after entering this State. The movement was to a coal bin or chute, where the coal would be delivered, as needed, to locomotives engaged in both interstate and intrastate commerce. Mr. Justice Hughes said:

"As we have pointed out, the Federal act speaks of interstate commerce in a practical sense suited to the occasion and 'the true test of employment in such commerce in the sense intended is, was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?' [Shanks v. Del. Lack. & West Railroad, 239 U. S. 556, 558, and cases there cited.] Manifestly, there was no such close or direct relation to interstate tranportation in the taking of the coal to the coal chutes. This was nothing more than the putting of the coal supply in a convenient place from which it could be taken as required for use."

In Bishop v. Delano, 265 Fed. 263, deceased was killed while sleeping in a caboose when he was off duty. His run was an interstate one. It was held that he was not engaged in interstate commerce *while he was so off duty.*

In Patterson v. Director General, 105 S. E. (S. C.)

747, a yard conductor was injured while attempting to move an engine, an act outside of his duties and one which he was forbidden to undertake. His crew had just moved an interstate car and had completed that duty, and they were then on a siding awaiting the passage of a through passenger train before taking up the next duty, which was a movement of any empty express car, the destination of which did not appear. *Held,* that he was not engaged in interstate commerce at the time of his injury, even if the express car was to carry interstate freight when loaded.

The above cases are all distinguished from the case at bar by the fact that the plaintiff here would not have completed his duty in connection with an interstate shipment until he had returned to the hump. It would make no difference if his next assignment had been in connection with an intrastate shipment. He was still engaged in interstate commerce until he returned for further tasks at the hump. For this reason the demurrers of the defendant at the close of all the evidence were properly overruled.

II.  Instruction "A" given at the request of plaintiff is criticised.

(a)  The first criticism is that the instruction told the jury that even though the plaintiff was guilty of contributory negligence, he could still recover, but the damages might be diminished in proportion to the negli-

Damages.    gence attributable to him. The basis of this criticism is that the proof does not show that plaintiff was employed in interstate commerce at the time of his injury. We have already found that the evidence warranted a finding that plaintiff was engaged in interstate commerce at the time of his injury and such finding disposes of this criticism adversely to the defendants.

(b)  The second criticism of such instruction is that it submitted to the jury the question of the duty of the servants of defendant operating said engine to look out

for other employees in said switch yards, for the rea-

**Lookout: Switchmen of Other Crews.** son that plaintiff was not a member of the crew operating such engine and therefore it was not the duty of those operating the engine to be on the lookout for other employees, but such other employees were required to look out for themselves.

The first case upon which defendants rely is Mo. Pac. Ry. Co. v. Mette, 261 Fed. 755. Mette was a brakeman employed with a switching crew. He gave the engineer a stop signal before throwing the switch to enable the engine to leave the siding. The engine moved forward while Mette was throwing the switch, and he was injured. It was not customary to give a stop signal when the switch target was against the engine, as it could not then move through the open switch. The alleged negligence consisted of disregard of the signal given and thereafter moving the engine forward without further signal. It was held that the clearance shown by the switch target was sufficient authority for the engineer to move forward without further signal.

In Aerkfetz v. Humphreys, 145 U. S. 418, plaintiff was a track worker injured by the movement at slow speed of freight cars in a switch yard. He knew such movements were likely to occur at any time, yet continued his work in the track in heedless disregard of the approaching engine and cars. The engineer had the right to expect the plaintiff and other employees in the yard, who knew the likelihood of such movements, would keep a lookout for themselves.

Elliott v. C. M. & St. P. Ry. Co., 150 U. S. 245, does not appear to be in point. The duty of the train crew to be on the lookout for the deceased was not discussed.

In Loring v. K. C., Ft. S. & M. Ry. Co., 128 Mo. 349, deceased was a member of a section gang and was killed by a switching movement. The engineer had no reason to expect him to be on the track where he was struck. He was an experienced man and knew the engine and cars were likely to be moving on the track where

he was struck. It was held that the engineer was not required to be on the lookout for him.

In Evans v. Wabash Ry. Co., 178 Mo. 508, deceased was an experienced section hand, familiar with the schedule of a fast through freight. He was engaged in removing weeds from the track near a station at which such train did not stop. The engine had whistled for the station, and it afterward gave additional warning blasts of the whistle. Without looking or listening for danger, deceased stepped in front of the approaching train and was killed. As the train approached, deceased was not in a place of danger, but stepped in front of the train when it was only a few yards away and rapidly approaching.

In Degonia v. St. L. I. M. & S. Ry. Co., 224 Mo. 564, deceased was also a section hand, engaged in working on the track at the time he was struck and killed. The engineer had the right to expect a clear track at the point of injury. The presence of section hands did not alter the situation, since such employees are bound to look out for themselves.

The facts in the case at bar distinguish it from the rule followed in the above cases. The evidence tends to show that the hurdy-gurdy car could not go down the main track of the yards after the hump-riders, when such track was occupied by the switch engine, and that when such engines were moving toward the hump it was customary for hump-riders to signal the engineer and for him to accept such signals and to permit them to board the switch engine and ride back up the hump. If the jury so found, then it was clearly authorized to find that it was the duty of defendant's employees operating said switch engine to be on the lookout for such hump-riders when the engine was on the hurdy-gurdy track going toward the hump.

In the Aerkfetz, Loring, Evans and Degonia cases the injured persons were section men, for whom defendant was under no duty to be on the lookout. In the Mette Case, the injured was a member of the switching crew and the movement of the engine without signal was proper.

None of these cases is in point on the facts of the case at bar. In view of the additional requirement in the instruction that the jury find that the engineer actually did see the plaintiff give a stop signal, it is difficult to see any substantial merit in defendant's criticism in this respect.

(c) The third criticism of Instruction "A" is that it required the jury to find the Illinois corporation negligent "if those in charge of the engine increased its speed before plaintiff was safely upon the engine, while the true rule is that those in charge of such engine were required to stop said engine long enough that plaintiff be afforded a reasonable opportunity to board the same in safety." We do not think the instruction is justly subject to this criticism. The portion thereof in question is as follows:

**Reasonable Opportunity.**

"And if you further find and believe from the evidence that just as the engine was about to reach the point where the plaintiff was standing in the track that instead of causing the engine to continue to slow down *and to stop* before reaching the plaintiff, if you find and believe from the evidence that he could have continued to slow down the engine *and cause it to so stop,* and carelessly and negligently failed to cause it to continue to slow down *and to so stop,* and carelessly and negligently caused the engine to continue to come forward and to start up suddenly and move toward the plaintiff with greater speed, if you so find, and if you further find and believe from the evidence that it was the duty of the said agents and servants of the said defendant to slacken the speed of *and stop the engine* before reaching the plaintiff upon the signal given by the plaintiff, if you find that there was a signal given by the plaintiff, and not to increase its speed, if you find that they did increase its speed, until plaintiff was safely upon the engine, if you find that it did increase its speed before plaintiff was safely upon the engine." (Italics ours.)

The jury were required to find the engineer failed

not only to slow down the engine, but also to stop it to afford plaintiff an opportunity to board it.

III. Defendants contend that the trial court erred in permitting the plaintiff to introduce evidence tending to show habitual disregard of Rule Q-6 forbidding employees to board approaching engines or cars while occupying the position which plaintiff occupied immediately prior to his injury. Plaintiff's theory of the liability of the Illinois corporation was that he signaled the engineer and he slowed down the engine (apparently in obedience to such signal) and that plaintiff expected it would be brought to a stop and that when the engine was within two or three feet of him its speed was suddenly increased and the engine struck him and caused his injury. His proof tended to show that he was compelled to jump for the footboard to save himself from injury when the speed was suddenly increased, for it was then too late for him to get out of the way.

*Rule of Railroad: Abrogation.*

On the other hand, the answer of the Illinois corporation charged that the plaintiff was attempting (voluntarily) to get upon the footboard of the approaching engine while he was standing in the track and pleaded Rule Q-6 forbidding such an act on his part. Defendants offered no witnesses upon the facts attending the injury. However, witness Lee, offered by the plaintiff, testified as follows:

"Q. Just state what you saw occur there at the time he was hit? A. Why, the man was standing there, the same as any other switchman would stand, and to the best of my knowledge, like any man would catch a train, he started to put his foot up, and I noticed him kind of lean back—either leaning back or as he fell, I don't know which it was."

This testimony, with later more elaborate details, was sufficient basis for the contention of defendants that plaintiff attempted voluntarily to board the moving engine and to authorize the giving of instructions on the

Laughlin v. Mo. Pac. Railroad Co.

defendants' theory of the accident. Of course, if plaintiff did not voluntarily attempt to board the engine while moving, but was compelled to jump for the footboard to avoid injury threatened to him by the negligent act of the engineer in suddenly increasing the speed of the engine, when it was too late for plaintiff to get off the track, the promulgation of the rule could not defeat his recovery regardless of whether such rule was in force or not. Proof of the habitual disregard of Rule Q-6 should not have been admitted when the state of the pleadings is considered. Indeed, allegation and proof of the existence of such rule on the part of the Illinois corporation was, we think, entirely unnecessary. Plaintiff alleged that his injury was caused by the sudden increase of the speed of the engine after his stop signal had been given and apparently accepted by the engineer and his proof showed that in the emergency created by the engineer, he was compelled to jump. Under its general denial, the defendant could have defeated plaintiff's case as thus stated by showing that plaintiff voluntarily attempted to board the engine as it moved toward him without any allegation or any proof of the rule. The existence of the rule was therefore immaterial on the case as made in plaintiff's petition, and unnecessary to defeat the case made either by his proof or by his pleading. Nor should the court have permitted plaintiff to offer proof tending to show the abrogation of the rule.

However, we are unable to see how any substantial rights of the defendants were prejudiced thereby. If the case had gone to the jury without instructions with the proof of the abrogation of the rule before it, the jury might have been misled because of the issues being thus befogged. At the instance of the defendants, the court gave instructions 5 and 6, as follows:

"5. The jury are also instructed that if you find and believe from the testimony that at the time plaintiff alleges he was injured the defendant Missouri Pacific Railroad Corporation in Illinois had in force in the

yard in which plaintiff alleges he was working a regulation known as 'Rule Q-6,' providing as follows:

" ' 'All persons are strictly forbidden to board engines or cars while they are in too rapid motion. Under no circumstances must they stand on track and board engines or cars when same are approaching them;'

"and that plaintiff herein, in violation of such rule, while standing on track, attempted to board a moving engine while same was approaching him, and as a result of such action received the injuries, if any, set out in his petition, then your verdict must be for the defendants.

"6. The court further instructs, you that if you find that plaintiff, while standing on the track, attempted to board a moving engine when the same was approaching him and by reason thereof received the injuries, if any, of which he now complains, and that the engine at the time was being operated in the usual and ordinary manner in which switch engines are operated when moving to and fro in a switch yard, then plaintiff in attempting to board such engine assumed the risk of being injured as result of such action on his part, is not entitled to recover, and you should so find."

And on its own motion, the court gave Instruction "B" as follows:

"The court instructs the jury that before you can find for plaintiff you must believe from the evidence that plaintiff gave the engineer of the locomotive mentioned in the evidence a signal to stop the locomotive, that the engineer recognized said signal, slowed up said locomotive and then when the same had come to within a few feet of plaintiff suddenly increased the speed of the locomotive and ran over plaintiff; if on the other hand you find that the locomotive as it approached plaintiff slackened its speed and that plaintiff while it was still moving attempted to step on the footboard of same and slipped and fell then the defendants are not liable in this case."

These instructions clearly told the jury that the plaintiff could not recover if he was injured while at-

tempting to board the engine while it was moving toward him. Instruction "B" in effect told the jury that Rule Q-6 was in force and effect, for it did not require any finding by the jury that it was in force.

During the argument of the case to the jury counsel for plaintiff was discussing the evidence tending to show habitual disregard of the said rule and the trial court overruled objection thereto by defendants' counsel. Thereupon plaintiff's counsel stated his position as follows:

"MR. ABLE: Our whole contention is that even if there had been such a rule, and even if he had known such a rule, he didn't violate it, and he gave a stop signal and intended for this engine to stop, and that is what he intended to do, and that he was forced—that the engine came towards him, and what occurred then certainly could not be a violation of a rule. No rule of any kind would prevent a man trying to save himself from impending danger. So I say Mr. Larimore is correct in that, that is our contention; but we further say the rule he violated was not enforced in those yards and that the men didn't do as this rule required them to do."

From the instructions quoted and the statement of counsel also quoted, it clearly appears that the issue submitted to the jury was the sudden acceleration of the speed of the engine when plaintiff reasonably expected it to stop, making it imperative for him to jump to save himself and that the jury could not have decided the case on the theory that plaintiff was *intentionally* boarding an approaching engine and should be permitted to recover because the rule forbidding his act was abrogated.

The cases cited by defendant do not meet the situation here. The rule that the omission of a necessary allegation in the petition cannot be aided by an allegation in the reply and that no instruction should be given to the jury authorizing a recovery by plaintiff on the proof of such allegation in the reply does not apply here, because no such instruction was given. On the contrary, the jury was in effect told that the rule, if violated, was

a complete defense. Whatever prejudice the defendant may have suffered by the admission of the testimony touching the abrogation of the rule was clearly removed by the instructions of the court and the statement of counsel quoted above. The error must be regarded as not prejudicial and the assignment overruled.

IV. The criticism of that portion of Instruction "B" (heretofore set out) which told the jury that if plaintiff attempted to step on the footboard of the locomotive while it was still moving and slipped and fell, defendants are not liable, is not justified when the instruction is considered in its entirety. The preceding part of the instruction required the jury to find that plaintiff gave the engineer a *stop* signal, that such signal was recognized and that the engineer slowed up such locomotive until within a few feet of plaintiff and then suddenly increased the speed of the locomotive and ran over plaintiff. The criticised portion simply stated the converse. Proof that plaintiff, in that situation, made a jump for the footboard to save himself, did not change the Illinois corporation's liability or make its liability greater or less, under the circumstances, than if plaintiff had not attempted to jump.

Criticism of Instruction.

Finding no reversible error in the record, the judgment of the trial court is affirmed. *Higbee, P. J.,* concurs; *Walker, J.,* absent.

PER CURIAM:—The foregoing opinion of DAVID E. BLAIR, J., in Division Two, is hereby adopted as the opinion of Court in Banc. All concur, except *Woodson,* C. J., who dissents.